The last case this morning is number 5-20-0026, Kramer v. Ruiz. Arguing for the appellant, Mark Kramer, is Lanny Darr. Arguing for the appellee, Gabriel Ruiz, is Aaron Phillips. Each side will have up to 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. And please remember, only the clerk of the court is permitted to record these proceedings today. Okay. Counsel for appellant, you want to begin? Mr. Darr? Morning. May it please the court, counsel. I'm Lanny Darr, and I represent the plaintiff and the appellant in this case. And this is about 103B, delay and due diligence. And I think if Judge Dugan had had the ability to see into the future two or three months and had anticipated this COVID shutdown that all cases have gone through, we wouldn't be here today. But unfortunately, he didn't have that foresight, and none of us did. So this case really boils down to whether a plaintiff should suffer the harsh penalty of a dismissal when there's been no prejudice and the uncontroverted evidence is that the delay was only due to inadvertence. And that inadvertent delay caused no repercussions or no harm to the defendant. And to illustrate this point, I just want to go through a brief timeline. On December 22nd, 2016, Steve Green was killed when he was a pedestrian, hit in Pontoon Beach. In January of 2017, so approximately one month later after the death, Mr. Ruiz, the defendant, signed an affidavit attesting to the fact that he only had liability insurance through his traveler's policy and that the extent of that policy was $100,000. And that policy was, or that affidavit, I'm sorry, was created by outside counsel and returned to travelers for them. And that was done on January 18th, 2017. So once again, we're still within a month of the death. Travelers has already said, this is all we have. They've prepared an affidavit and they've submitted it to plaintiff's counsel at that point. And I think that's significant because when you're doing a 103B analysis, one of the inquiries we'll talk about later, or I will talk about later, is that they have an opportunity to conduct their investigation. And if at some point within a month of the accident, you're having your client through private counsel attest to the extent of their liability coverage and tendering that back to the plaintiff's counsel, I think you've done your investigation, or certainly you've had the opportunity to do so. But nevertheless, the case didn't get settled at that point. And on June 21st, 2017, Cervantes and associates advised that they were taking over from the original plaintiff's counsel and that they would be handling the claim from therefore out. Then on June 23rd of 2018, so a year and a half after the death, Mr. Cervantes died. And Mr. Cervantes was the counsel representing the plaintiff at that point. Suit was filed on December 18th, which would be four days before the expiration of the statute of limitations. And there was no service on the defendant until August 20th, 2019, which is roughly eight months from the date of service, or 32 weeks. And then the dismissal order was entered on December 30th, 2019. So within about six months or so from the, or four months after the service was had. And in that case, well, in Siegel v. Sacco, the court said that there was no bright line rule for whether there was a balancing test. And that's the Supreme Court case in 1990 as to whether or not this court or any court should exercise discretion and dismiss a case for a delay. And Siegel also goes on to state that the harsh penalty of dismissal is only justified when the delay in service of process is of a length which denies a fair opportunity to investigate. In this case, it was 32 weeks, eight months, however you want to characterize it. But the opportunity to investigate was never abridged. It was never, they had an opportunity. And in fact, they had filled out an affidavit attesting to the extent of their insurance coverage within a year. I mean, within a month of the date. And the defendant has never argued in the trial court or in this court that they were actually in any way prejudiced as a result of this delay. There's no argument to that effect. All they're doing is taking advantage of an unfortunate circumstance that results in a fortuitous circumstance for them. And that's the passage of Mr. Cervantes in this case getting lost in the shuffle at their office, which resulted in a delay in filing, but also a delay in the process, service of process. And, you know, one of the factors laid out by the courts is whether the defendant or the plaintiff could have done more if the defendant was easily located, things along those lines. Those all go for the defendant in this case. There's nothing that we're arguing that, you know, other than inadvertence and lack of understanding as to how the summons were issued in the circuit clerk of Madison County at that time. So there's no question that the plaintiff could have had the summons issued sooner. They could have served the defendant sooner. But that's not the end of the inquiry. The inquiry truly should be whether or not there was any prejudice that resulted from this thing or prejudice of such a sort that a plaintiff should suffer this harsh reality of having her lawsuit dismissed with prejudice. And if you balance those factors, I think it's very easy to say, yeah, this was not the best of circumstances for a plaintiff's counsel. But in the whole larger balancing of the factors, it doesn't justify dismissal with prejudice because the defendant has never even alleged any element of prejudice or bias as a result of this delay of 32 months. Mr. Dar, is the standard prejudice? I thought it was reasonable diligence. It is reasonable diligence. But to determine whether or not someone has acted reasonably, one of the factors to be considered is under SACO and a lot of the other cases that are repeated is, or Siegel, is that whether there was bias or prejudice. And if due diligence, if it's merely a factoring of the passage of time, then I think that's what the lower court did. The court just said, hey, eight months, that's a long period of time and left its inquiry there. And that's why I think that this is an arbitrary ruling. Of course, the standard we're required to meet is an abuse of discretion. Judge Duggan abused his discretion or acted in an arbitrary fashion. And the reason I think that he acted in an arbitrary fashion is, and therefore abused his discretion, was because he really only looked at the one time, which was the passage of time. The passage of time, eight months, it is what it is. I mean, we can't argue around that. But the fact is that passage of time didn't cause any problem. It didn't cause any delay in this case. I mean, it caused delay, but it didn't cause any harm to this case. And there's a third district case from 2009, Verlo, and I'll spell that, it's V-E-R-L-O-U-G-H versus Gagliano. And that case states that five to seven months is the minimum delay that has to occur before the defense can even make a prima facie showing of lack of due diligence. So if you follow this third district case, Verlo, it says that they couldn't have even made the prima facie case until they were within that window. And we're just slightly outside that window. So then once they've made their prima facie case, I think you have to, that's what Judge Duggan should have done, I believe, in my opinion. He should have looked down the other factors and really focused in on, well, okay, but what is the downside or what's really happened because of this delay? Is there a harm present that I need to rectify by dismissing this lady's lawsuit? And if he used that analysis and considered all the factors, I think it's easily said, no, there's no harm here to rectify. The harm was to the plaintiff in delaying the resolution of her claim, but the defendant hasn't claimed any type of harm. And under those circumstances, it's just too harsh of a penalty to inflict upon a plaintiff to say- Could you provide the citation to that case? I don't have the brief in front of me. Yes. I think you may have spelled it wrong. That is very possible, but I think I do have it right here. Or if you have the proper spelling, that would be fine. I do have the case right here. It is VERPLO. I'm sorry. V-E-R-P-L-O-E-G-H. Okay. Versus Gagliano, which is a 396 ILEP 3rd, 1041. Thank you. And once again, that case says that the window is five to seven months for a prima facie showing. And once again, the punishment in this case certainly outweighs the harm in this case. And, you know, once again, we've said that the reason for the delay, and there was a reason for the delay, which was the passing of Mr. Cervantes and then the rest of his office not finding the case at the last minute, and then Mrs. Suttmuller going out on medical leave. But Counsel, didn't he die before the complaint was filed? He did. He did. He died several months before the complaint was filed. So I'm not understanding how his death had to do with the delay of service. Well, it doesn't really go into the delay of service. It goes into Judge Dugan made a finding that they waited until the last couple days before the statute expired to file suit. That went to why they waited so long to file suit. Then when they got out of, once suit was filed, there was just, I mean, Mrs. Suttmuller went out on medical leave, but there was also just a misunderstanding of how to get the summons issued from the circuit clerk. I mean, I don't think there's any way to slice that other than to say that was on Plaintiff's counsel. I mean, there's... Statute of limitations figures prominently into the analysis, doesn't it? I'm not sure I follow. Well, it's important to note that fact that you just mentioned, that it was the statute of limitations was almost expired within a couple of days when the complaint was filed. And then it was another eight months delay. Whereas if they had filed it a year before, it would have not factored into the statute. Well, I think, I mean, if there was a delay before the statute, in the sense of he would have filed it a year before and then not perfected service, that would be under a different section of 103, and it would be a dismissal without prejudice. I mean, he has the full two years to file his lawsuit or file her lawsuit, which they did. Well, under the case law, that's my point, though, that the fact that it was served after the statute had expired and eight months after the statute had expired. Yeah, and then that's why it was a dismissal with prejudice. And that's why, yeah, I mean, my whole argument has gone to whether that prejudice, the dismissal with prejudice is justified under the circumstances of this case, when the circumstances of the case being that there's no bias or prejudice by any of this activity. I mean, there's a lot of cases that, you know, a lot of states that aren't involved here, but the passage of time can't be the sole inquiry. Because, I mean, you know, if we were in Missouri, you'd have five years just to file it. We wouldn't even be past the statute yet. So, and my point is the passage of a year or a year and a half or two and a half years doesn't really come into the equation just by the passage of time. There's got to be some other inquiry that's necessary. Or we could just have a rule that said six months after the statute's expired, if you don't have service, you're dismissed with prejudice. But our Supreme Court— Okay, Mr. Darr, you'll have some time after Ms. Phillips argues, okay? Okay, I'm sorry. Thank you. Ms. Phillips? You have to turn your mic on. Good morning. Good morning, Your Honors. Apologies for that delay. Members of the court, panel, and counsel, may it please the court, Appellee Gabrielle Ruiz is asking this court to affirm the order granting the defendant's motion to dismiss pursuant to Supreme Court Rule 103B, as the trial court did not abuse its discretion. I think I'd like to start first with counsel's assertion with respect to that the passage of time is not the sole inquiry. And, in fact, I would agree with that assertion. I believe that when you look to the case law that both parties have presented here and that was considered by the lower court, was considered by Judge Dugan, that this is a factor test. And one of those factors that we look to is initially the amount of time it took for service. And that's what the defendant put forward. That's what we provided to the lower court, to the trial court, was the fact that it was eight months. And it was, as Justice Moore inquired about it, it was, in fact, eight months after the statute of limitations, which is also addressed in the case law, that this is a consideration. And it's a consideration because when you file on the eve of the expiration of the statute, there… Ms. Phillips, just one moment. Okay. I apologize for that. Someone was at our door. Okay. I'm the only one here, so. Okay. I apologize. Thank you. Thank you. I believe what I was indicating was that the case law discusses that when you file on the eve of the statute of limitations, there is an onus put on the counsel to secure the service in a diligent manner. Is that how the rule reads? I mean, the rule really is a bright-line test between whether it's before the statute of limitations or after. It's not whether, at least as I read the rule, it's not whether it was four days before or eight days before or two months before. It's whether service was attempted before or after. Am I wrong about that? Your Honor, I do believe that that is a strict reading of the rule. Within the case law that has been cited, there is an indication that there is greater emphasis placed on service after when you file on the eve simply because you are nearing that timeframe. And what I… I'm sorry, Your Honor. Is there any evidence in the record to refute the testimony or the affidavit of this woman who said, I didn't know that the summons had not been served? Anybody dispute that? Yes, Your Honor. There is a review of the docket, the review of the docket that would indicate that the summons was issued and there was never a return of summons filed. No, but that's different. The clerk issues the summons and is supposed to send it to the attorney for service. She claims she never got it. Is there anybody who refutes that? No, Your Honor. How I would phrase it is, it's not that we refute that she never got it, but I think it's the reasoning that she never got it. There is no reflection or indication that it wasn't provided via the e-file and serve mechanism. It was simply that she was unfamiliar with that procedure to know that the summons had been returned to her so that she could then place it for service. That's been provided within the record as well. So, that's something we have to assume based on the fact of e-filing and her affidavit. And then we have her being out on medical leave because she has multiple sclerosis. And there's nothing that refutes that as far as a two-month period. That's correct, Your Honor. And for that time frame, I would also look to adding a few dates in. We've got the original filing on December 18, 2018. Summons issued according to the court record on December 20, 2018. And Your Honor is correct. There is no one asserting that counsel was not ill during that time period, that month or two months. I believe she indicated it was April and May of 2019. I think where the inquiry turns further, though, is that setting aside those two months, what occurred other than that? Under Rule 102, we know that there is a self-expiring of the original summons. And no confirmation occurred that summons had been issued at that point. We know then by counsel's own attestation that she wasn't familiar with that the case had been set for case management in July of 2019. She became aware of that and then thereafter sought the alias summons on August 9, 2019. So even after that time period of returning from being ill, which is unfortunate, obviously, there doesn't appear to have been diligence during those times or other efforts taken. But wasn't there some notice that she received when she came back from her medical illness about a case management order being set? I believe that counsel had indicated she reviewed the court docket and realized that it had been set in July of 2019. That was after she had returned. She then realized that there had been a case management that caused her to inquire further, pull the file, and realize that there was not service on the defendant. At that time, it's not clear why, between whatever date in July until August 9, there was no summons requested. But then once the summons was requested on August 9, 2019, service was effected within 11 days at the address that had always been provided for defendants. So my question is then, why isn't her conduct after her illness reasonable? I mean, the issue here is post-statute of limitations, did she exercise reasonable diligence, and how was your client prejudiced? Well, and Your Honor, I think I'd like to address that in two parts. I think first, I think it's a disservice to the defendant if we don't also focus on that time period between December 20th of 2018 up through the illness in April. That alone could be potentially four months of time frame. And Your Honor asked Mr. Darr for a citation to the, and I apologize, and I'm not sure how to pronounce it, but VERPLO, the V-E-R-P-L-O-E-G-H case. Going on further in that case, that case itself talks about that the court has to look at what the plaintiff did to attempt or locate or serve the defendant during that time period. That case actually goes on to talk about situations where four months was enough. And we know that prima facie, five to seven months is enough. But this case talks about circumstances where four months weren't enough. It cites earlier cases going back to 1995, 1986, where four and a half months, four months where there were no attempts made. And that's why I say I think that yes, we do know that there's potentially up to a two-month period in the midst of that time frame where counsel was undergoing illness. And we do not dispute that, do not refute that. But to simply look to after that time frame I don't think is a correct analysis because we have the time frame from the filing of the suit, almost four months up to the original illness time frame after the suit, and any efforts that could have been made during that time frame. And I think that the key issue here is, as Your Honor has already indicated, is there's no attempt to serve the original summons whatsoever. And I don't think that's disputed. And then once the alias summons is requested, there was significant ease in that service of summons being accomplished within only 11 days at the original address of the defendant. But as you say, there was no attempt to serve between the time of filing and her illness. But we do know that that wasn't intentional. We do know that according to her affidavit, which is unrefuted, that she didn't receive the summons. If you don't receive it, how do you serve it kind of thing, you know? That's my question. And Your Honor, I'd like to go back and address that then because maybe I wasn't clear previously. I think the question of receiving summons here is also a legal issue. That once we have moved into this territory of e-filing where we are required as counsel to be able to interact with the court via that electronic filing process, I would dispute that she did not receive. I mean, it was provided to counsel. The fact was that counsel did not know apparently how to go in and get the summons and then place it for service. Nor did she under Rule 102B in January when she was still in the office say, you know, do I have service? Do I need to request an alias? If I didn't get service, how do I go back and contact the clerk and obtain that? So I would make that distinction that I don't think it's a matter that she didn't receive the summons. It was that she did not apparently understand how to access that summons and pull it down to be able to then place it for service. So it would be your contention that that two- or three-month period before she became ill is so unreasonable that it would require dismissal? Your Honor, I don't know that that's standing alone, but I think when we look to all the balancing, all of the factors, which the test, I also would point out, is not based upon intent. There is case law here from the Supreme Court that we have, both parties have cited to, the Long v. Alborno 2007 case from the Illinois Supreme Court and the Seagal case cited by counsel 1990 from the Illinois Supreme Court that says that while that argument has been presented, that there's a question that they would like to posit it as, this question of intention versus prejudice, that case law says it is a balancing factor test where we look objectively to the attempts that were made. And unfortunately, that requires us here to consider what attempts were made, unfortunately for counsel with these set of circumstances, plaintiff's counsel, what attempts were made during that timeframe. And objectively, what we know here is that after the case is filed on December 18, 2018, there is no attempted service until August 9, 2019. And when you look to all these factors and consider those objective analysis, there doesn't have to be a malicious intent. There does not have to be overarching prejudice, although I would take issue with that, if I may, in a moment as well, in terms of the positing of the affidavit as being an investigation. An affidavit that verifies insurance coverage is nowhere near an investigation of a claim. And that's the only evidence of any interaction with defendant Ruiz. Any other communications after that time went solely to the insurer, not to the defendant. But again, I think that we are somewhat mischaracterizing it if we accept appellant counsel's assertion that there has to be some type of intent and resultant prejudice for this to weigh in the favor of defendant. I don't believe that that is correctly characterizing the case law that has analyzed this rule throughout time, including through the Supreme Court. Counsel, the question was asked by Justice Cates, was the defendant in any way prejudiced? And I don't believe that was answered. Oh, my apologies, Your Honor. And I think that plaintiff's counsel and appellant's counsel is correct that there's not been a focus placed upon that question. The record, however, does indicate the circumstances of this accident, and it was an unfortunate accident. But it is one with questionable liability, given the fact that the individual was in a heavily traveled area, a roadway at nighttime, no reason to expect that that individual would have been crossing the roadway. So in terms of investigation, we have asserted that there has been a passage of time in that ability to go back and investigate. And that's why I brought up the issue of the affidavit, that, yes, the affidavit verified what the insurance coverage was within a month of the accident. But after that timeframe, there is nothing more that happens in the defendant, and there's nothing in the record that indicates that the defendant had any other further notice or contact, never knew that the suit had actually been filed until eight months after the expiration of the statute. But you're still showing no prejudice. I don't know what the prejudice is, if you are. Yeah. I think simply the prejudice would be the ability to investigate in a closer timeframe, given the type of circumstances and evidence around this unusual accident. But I thought Cervantes, before his death, did notify the insurance company. Way, way, way before this. Yeah, Cervantes did notify the insurance company in June. But he didn't notice for a long period of time. The insurer did, yes, Your Honor. Okay. In fact, before that, I think there was an attorney, Jane Unsel, who actually was involved as well, right? Your Honor, Jane Unsel did provide the affidavit, assisted with the affidavit we were just discussing in January of 17. Right. So the insurance company, we don't know, as we sit here today, whether the insurance company went out, investigated, has a complete file. I mean, at least from the defendant's point of view, the individual defendant who was involved in the death of this person, we don't know that there's any prejudice to your client. Not the insurance company, but the individual. Just the same indication that we've discussed, an ability to, whether or not there was any ability to investigate this information further, as Your Honor indicates, because I believe that the, and I see that my time has elapsed, if I may, that the case law discusses the prejudice to the defense. And as counsel, we all obviously understand that there are insurers that may or may not be investigating behind that. But I don't know that overtly the insurance company is where that analysis is directed because what the case law discusses is whether or not the defendant has noticed. And I'm not disputing with Your Honor that it may be a relevant inquiry. I just have not seen that the case law discusses notice to the insurer as a separate matter. But that was my question. I think that was Justice Welsh's question. As far as this record goes, we have no effort by you to show prejudice to your individual defendant. Beyond indicating the passage of time. That's correct. Which you conceded at the beginning of your argument is not the only factor. That's correct, Your Honor. But it is the prima facie case brought forth by the defendant that thereafter the plaintiff carries the burden to then justify. I do see that I'm over my time and I wonder if I might just provide one concluding sentence or comment. Go ahead. I simply am asking that when the court here looks to the factors that have been enunciated in the totality of the circumstances that plaintiff has not satisfied its burden of showing that the remaining six factors beyond the discretion of the trial court. It is appellee's position that the trial court did not abuse its discretion and that this matter should be affirmed in that the motion to dismiss pursuant to rule 103B should stand and we would ask for the court to rule in that way. Thank you so much. Thank you, everyone, for your time. Okay. Mr. Dar, response. Yes. Thank you. I'll try and be brief. As I mentioned briefly in my initial comments, this is not a new event under 103B. Under Brzezinski v. Bora, which was a first district case in 1994, and Brzezinski is B-R-E-Z-I-N-S-K-I v. Bora, V-O-H-R-A. The court looked at facts almost identical to these, which was an associate left a law firm around the same time. And the defense was we've got really short-handed and the case got lost in the shuffle. And the court said that was a reasonable explanation for this result. And although, you know, there was some discussion earlier on too about whether intent was or was not a factor. And I think clearly the court, including going back to Siegel, says you got to look at was, were they trying to actually toll the statute of limitations by not perfecting summons? Or were they trying to gain some sort of tactical advantage? Once again, in this case, there was no advantage to be had by drawing this out except to delay resolution. And then my last comment will be on this affidavit in which the defense count, private counsel and the insurance company counsel were communicating and perfected the release of this. At some point, and we don't have this in the record, but the insurance company took the, under the insurance code, the insurance company is required under certain circumstances to verify their level of coverage. And I think it's section one 24 under the insurance code. And I could very well be wrong on that, but they don't have the obligation to go on and prove all of their other potential coverages where there's insured. And that's what they did in this case. So they, it seems to me that they had made the decision that they were going to do an investigation.   And I don't want to be so pessimistic. I want to make sure that there's no other policies. I don't want just your verification as to coverage. I want verification as to other available coverages. And that's when they, they had outside counsel and she prepared an affidavit. And this was all done within a month of the accident. So clearly they had knowledge. They had the ability to do their investigation. And I would suggest that the, that the circumstantial evidence suggests that they did do an investigation. And they went out and said, this is all we have here. We've got an affidavit, which was not by us, but by outside counsel. So I, unless there's anything else for me, I'll yield back my two minutes. You can't yield it back, but you, you can conclude. I concluded. Okay. Thank you, Mr. Dar and thank you, Ms. Phillips. That'll conclude the arguments of this case and we'll take the matter under advisement and issue a disposition in due course. Okay. Thank you for your time.